PER CURIAM.
Defendants below bring this interlocutory appeal from an order denying their motion for a summary decree, motion to dismiss and motion to strike in an action for specific performance or damages arising from the alleged breach of a written agreement to lease certain space in a shopping center.
The controversy between the parties arose as an aftermath of a series of business dealings in which the appellants constructed shopping centers and leased store space therein to the appellee who was in the business of operating coin laundry and dry cleaning plants or dry cleaning pickup stations. In addition to operating such establishments, the appellee also was in the business of selling the equipment necessary for such commercial installations.
The record discloses that in the transaction from which this cause arises, the parties had signed an instrument styled a “Lease Brief” reflecting their agreement to enter into a five-year lease for a given space in a shopping center being developed by the corporate appellants of which Mr. Hughes was the president. The “Lease Brief” was signed by Reid B. Hughes and J. B. Murphy, President of Jemco, Inc. The parties had entered into similar agreements on three prior occasions leading to leases in three other shopping center locations. Indeed, the record even reflects that as to one of the laundry operations in Pa-latka, Florida, Hughes had a proprietary interest with Murphy.
Considering the instrument signed by Hughes and Murphy, its provisions, and the prior similar dealings had between the parties, there seems to be no doubt that the parties had entered into a binding and enforceable agreement to enter into a lease of space in the Derby Plaza Shopping Center. Any doubt that the parties intended to enter into a lease is effectively eliminated by Hughes’ letter to Murphy dated September 20, 1965, and signed by him as president on Hughes Oil Company stationery, by which letter Hughes advised Murphy of his agreement to furnish certain waste disposal facilities and to warrant the acquisition of certain state permits to install a coin laundry. This letter also gives Murphy the “ * * * right to cancel at any time until January 1, 1966, a lease on coin laundry and dry cleaning pickup store located at Derby Plaza, Eighth at Derbyshire.”
In addition to the above matters, the complaint alleges that in reliance on the agreement embodied in the executed “Lease Brief,” the plaintiff negotiated with one Henry Kress for the purpose of subletting the premises to him and selling him the necessary equipment for the operation of a coin operated laundry and dry cleaning plant or pickup station, and that Mr. Hughes had knowledge of such negotiations. It is further alleged that notwithstanding *567 Hughes’ knowledge that Murphy was negotiating with Kress, Hughes leased the space that had been agreed upon to go to Murphy directly to Kress, causing Murphy to suffer damages for loss of Kress as a customer. It was charged that Hughes engaged in these direct dealings wilfully, maliciously, fraudulently, and with deceit.
We think that the trial court was correct in denying the appellants’ motion for summary decree. The agreement entered into by the parties styled “Lease Brief” is an enforceable agreement. It is a written agreement for a lease and is no less a contract than a contract or agreement for deed. Miami Real Estate Company v. Hotel Halcyon Corp., 98 Fla. 59, 123 So. 1 (1929); Stone v. Barnes-Jackson Co., 129 Fla. 816, 176 So. 767 (1937); and S. Lemel, Inc. v. 27th Avenue Farmers Market, Inc., 126 So.2d 167 (Fla.App.3d 1961).
It is suggested by appellants that the agreement here in question is a nullity because it does not embody all of the terms of the proposed lease and, therefore, is wanting in mutuality and definiteness of obligations. As an example of conditions not expressly covered in the lease brief, the appellants point to the absence of a specification as to the number of parking spaces in the shopping center to be allotted to this particular tenant, the absence of an expression of obligation to keep the interior and exterior of the building to be leased in repair, or an expression of who was to pay for the utilities. We do not think that the failure to expressly provide for such details is fatal to the existence of a valid agreement to enter into a lease, particularly in circumstances such as those present here where the parties had on three prior occasions entered into similar leases in separate shopping center locations. Accordingly, it is our view that the agreement here involved is not so wanting in mutuality as to fall within the rule announced in Mann v. Thompson, 100 So.2d 634 (Fla.App.1st 1958); Orbit Construction Company v. Trail Development Corporation, 198 So.2d 341 (Fla.App.2d 1967); or John I. Moss, Inc. v. The Cobb Co., Inc., 198 So.2d 872 (Fla.App.3d 1967).
Appellants further urge that in any event, the “Lease Brief” here sued upon is not binding on the corporate appellant because that instrument is signed by the appellant, Reid B. Hughes, individually, and not in any corporate capacity, although it seems well established by the record before us that Mr. Hughes is the president of the corporate appellant. We agree with the appellants, that if Mr. Hughes was not acting in behalf of the corporation of which he is president, then, by all means, that corporation should not be bound. However, this is a question of fact which yet remains to be determined by the trier of fact based on evidence to be later adduced. Considering the facts of this case against the background of prior dealings between these parties, we certainly cannot at this preliminary stage foreclose the possibility of an evidentiary showing by the appellee that Mr. Hughes was in fact' acting in behalf of the corporate defendant or that Mr. Húghes had ostensible authority to speak for the corporation.
In addition to the above issues, appellants further contend that the prayer for specific performance cannot be granted for the reason that the complaint reflects on its face that the defendant had already leased to Kress the premises which it had allegedly agreed to lease to Jemco. Appellants correctly advance the general rule that equity will not grant specific performance where the contract sought to be enforced is impossible of performance, or where the defendant has no title to convey or where a lessor has already leased the premises in litigation. Krause v. Owens, Fla.App., 138 So.2d 370, and like cases. However, there does seem to be an exception to the general rule last cited *568 which arises where the defendant in a specific performance suit cannot convey title for the reason that he had deliberately violated a contract to sell realty by subsequently entering into another contract to sell to others for a higher price where both parties to the second contract had knowledge of the first contract, the one being sued upon. Said exception to the general rule was recognized by our Supreme Court in its decision in Sperling v. Davie, Fla., 41 So.2d 318. The complaint in the instant cause alleges in paragraph three that the defendant, appellant here, knew of the plaintiffs prior negotiations with Kress and, notwithstanding that the defendants had already entered into an exclusive agreement to lease space in the Derby Plaza Shopping Center for a laundry or dry cleaning operation to the plaintiffs, nonetheless leased such space to Kress who in turn had knowledge of the agreement between Hughes and Murphy.
These circumstances, if shown to exist as the case progresses further in the trial court, may justify resort to the exception to the general rule on specific performance just discussed, though we do not decide that question.
Before an action may be disposed of by summary process, it must appear that the case has progressed to the point where there are no questions of fact yet to be decided by the trial court. The office of summary judgments is such that they should not be invoked where there exists conflicts or different reasonable inferences as to material facts. 30 Fla.Jur., Summary Judgments, Section 9. The party moving for summary judgment must show conclusively that no material issues remain for trial. Harvey Building, Inc. v. Haley, 175 So.2d 780. In making a determination as to the existence of genuine issues of fact, all inferences of fact from the proofs proffered at the hearing on motion for summary judgment must be drawn against the movant and in favor of the party opposing the motion. We think the trial judge correctly followed this rule in denying the motion in question.
This interlocutory appeal is dismissed and the case remanded to the lower court for further proceedings.
WIGGINTON, C. J., and RAWLS and SPECTOR, JJ., concur.